JOSEPH R. GALE,

     Plaintiff,

                                              CIVIL ACTION NO. 06-15710

vs.                                          DISTRICT JUDGE GERALD E. ROSEN
                                          MAGISTRATE JUDGE STEVEN D. PEPE

GENERAL MOTORS and
MICHIGAN STATE TREASURER,

     Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT GENERAL MOTORS' MOTION FOR DECLARATORY JUDGMENT (DKT. #16)

On December 26, 2006, Plaintiff, *in pro per*, filed a Complaint, and related motions, alleging violations of the Civil Rights Act, 42 U.S.C. §1983, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1000 *et seq*., against the Michigan State Treasurer ("State Treasurer") and General Motors ("GM") seeking declaratory relief and $75,000 in damages against each Defendant.  On January 12, 2007, the Michigan State Treasurer filed a motion arguing that Plaintiff's Complaint and motions should be dismissed under Fed. R. Civ. P. 12(b)(6) for lack of jurisdiction (Dkt. #6).  On January 31, 2007, Defendant GM filed its Answer and a Counter-Claim as well as a Cross-Claim under ERISA against the Michigan State Treasurer seeking a declaration of its rights and exoneration of its actions (Dkt. #12).

Against the Michigan State Treasurer, GM seeks a declaration that its suspension of pension payments to Plaintiff or its sending them as directed by Plaintiff and not to his custodial

institution does not violate an October 20, 2003, Cheboygan County Circuit Court order discussed below. GM also filed a separate Motion for Declaratory Judgment that it has no liability to Plaintiff by forwarding monthly pension checks payable to Plaintiff to his address at the prison during the period from January 1, 2005, through December 2006 (Dkt. #16, p. 14).[1] Further, GM seeks a declaration that Plaintiff's pension benefits held in suspense commencing January 1, 2007, and pension benefits payable in the future should be forwarded to the address designated by Plaintiff, or should continue to be held in suspense at his direction. *Id.*

A February 20, 2007, Report recommended that the State Treasurer's motion to dismiss against Plaintiff be granted based on this Court's lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine and Michigan's doctrine of *res judicata*. Because Plaintiff and the State Treasurer were both parties to the previous state court action in which a final order was entered, it was determined that this Court would not have jurisdiction under the *Rooker-Feldman* doctrine to alter or amend the order of the Cheboygan County Circuit Court (Dkt. #25, p. 5).[2] In addition, because state courts enjoy jurisdiction to decide federal ERISA defenses, *Clayton*

---

[1] GM had earlier filed a similar motion for declaratory judgment with regard to Plaintiff and all "similarly situated prisoners" in Michigan (Dkt. #16).

[2] Under the Rooker-Feldman doctrine, only the United States Supreme Court has jurisdiction to review a state court decision. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), the Supreme Court, in reviewing an attempt to seek relief from a state-court judgment, stated that "no court of the United States other than this court could entertain a proceeding to reverse or modify the [state court] judgment." In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), the Supreme Court further reaffirmed that "the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings." The doctrine prevents both a direct attack of the substance of a state court decision and a challenge to the procedures used by the state court in arriving at its decision. *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 493 (6th Cir.2001).

*Group Services, Inc. v. First Allmerica Financial Life Ins. Co.*, 166 F.Supp.2d 566, 576 (E.D. Mich. 2001) (citing *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir.1995) (*en banc*); *Zuniga v. Blue Cross and Blue Shield of Michigan*, 52 F.3d 1395, 1399 (6th Cir.1995)), and Plaintiff failed to raise such a defense in Cheboygan County Circuit Court, it was determined that Plaintiff's claim against the State Treasurer was also barred from this Court's review under Michigan's doctrine of *res judicata*.[3]  On September 28, 2007, the Court dismissed Plaintiff's Complaint in its entirety  (Dkt. # 48 referring to Dkt. #5).

The Court further ordered that GM's Counter-Claim and Cross-Claim against Plaintiff/Counter-Defendant Joseph Gale and Cross-Defendant Michigan State Treasurer proceed pursuant to the prior plenary Order of Reference under 28 U.S.C. § 636(b) (Dkt. #5).  For the reasons indicated below, it is RECOMMENDED that Defendant GM's Motion for Declaratory Judgment be GRANTED.

## I.    BACKGROUND FACTS

---

[3] Generally, the doctrine of *res judicata*, or claim preclusion, bars a subsequent action between the same parties when the evidence or essential facts are identical.  Michigan has adopted a broad application of the doctrine of res judicata , which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not. *Limbach v. Oakland County Road Commission*, 226 Mich. App. 389, 396 (1997). Application of the doctrine of res judicata requires that (1) the first action be decided on its merits, (2) the matter being litigated in the second case was or could have been resolved in the first case, and (3) both actions involved the same parties or their privies.  *ABB Paint Finishing, Inc. v. National Union Fire Ins.*, 223 Mich. App. 559, 562 (1997). "The test for determining whether two claims are identical for *res judicata* purposes is whether the same facts or evidence are essential to the maintenance of the two claims," *Huggett v. Dep't of Natural Resources*, 232 Mich. App. 188 (1998), not whether the grounds asserted for relief are the same. *Jones v. State Farm Mut. Auto. Ins. Co.*, 202 Mich. App. 393, 401 (1993), mod'f on other grounds, *Patterson v. Kleiman*, 447 Mich. 429, 433 n. 3 (1994).

Plaintiff is a former GM employee who retired and receives a monthly pension benefit under the GM Hourly Rate Employees Pension Plan ("Pension Plan") with benefits commencing October 1, 1981. Plaintiff is currently incarcerated by the Michigan Department of Corrections ("MDOC") at 8585 N. Croswell Road, St. Louis, MI 48880. On July 9, 2002, he was sentenced to a term of incarceration of eight to twenty years by the Cheboygan County Circuit Court for criminal sexual conduct first degree (person under 13) and criminal sexual conduct first degree (relationship).

Pursuant to the State Correctional Facility Reimbursement Act ("SCFRA"), MCL 800.401 *et seq*, as amended, the State Treasurer brought an action in state court against Plaintiff to recover the costs involved in his incarceration.[4] *See, State Treasurer v. Joseph Russell Gale*, Cheboygan Co. Cir. Court, Case No. 03-7186-CZ. The State Treasurer sought Plaintiff's monthly pension benefits of approximate $840.00 per month which it asserted was an asset, as defined by SCFRA, MCL 800.401a(a). On September 5, 2003, Plaintiff was served with the State Treasurer's Summons and Complaint and the Cheboygan County Circuit Court's Order to Show Cause. A hearing was held in this matter on October 20, 2003. Plaintiff did not respond to or oppose the State Treasurer's action, nor did he appear at the hearing or send a written

---

[4] Michigan enacted SCFRA to reimburse the state for the costs of detaining and providing for its prisoners. Under SCFRA, the attorney general may seek reimbursement for expenses incurred during a prisoner's incarceration by filing a complaint against the prisoner in the state trial court. Mich. Comp. Laws § 800.404(1). The court, after considering any legal or moral obligations of the prisoner to support any dependents, may order the prisoner to reimburse the state for the costs of incarceration in an amount up to 90% of the prisoner's assets. Mich. Comp. Laws § 800.403(3). A prisoner's assets include his pension benefits. Mich. Comp. Laws § 800.401a(a).

answer to the State Treasurer's Complaint.[5]

On October 20, 2003, the Cheboygan County Circuit Court awarded 90% of Plaintiff's pension to the State of Michigan as partial reimbursement of his cost of incarceration. Pursuant to § 800.404(3) of the Michigan Compiled Laws, the state court may order any person, corporation, or entity having custody of a prisoner's assets to "appropriate and apply the assets or a portion thereof toward reimbursing the state." But this specific provision of SCFRA is not applicable where, as in the present case, a prisoner's assets are held by a private pension plan. The State recognizes that application of § 800.404(3) in those cases would violate ERISA's anti-alienation provision, which states that each plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Instead, in order to recover a prisoner's benefits held by a private pension plan, the state utilizes SCFRA in conjunction with other Michigan laws and with MDOC's prison directives.

Under SCFRA, the Attorney General first pursues a judgment against the prisoner and is awarded a percentage of the prisoner's pension payments. *See* Mich. Comp. Laws §§ 800.403(3), 800.404. The court then orders the prisoner to inform his or her pension plan that any benefit payments should be sent to the institutional address. If the prisoner refuses to comply, the warden of the prisoner's institution must send a copy of the court order to the pension plan. The order serves to notify the pension plan of the prisoner's institutional address. Once payments are received at the prison, they are automatically deposited into the prisoner's institutional account and are then confiscated by the state.

---

[5] Plaintiff states that he sent the pleading to his attorney who instructed him "not to worry." Yet, Plaintiff indicates his attorney never took any action in the case (Dkt. #1, p. 6).

Plaintiff in his complaint asserts that on four occasions he refused to sign a pension benefits address change in compliance with the Cheboygan County Circuit Court, specifically referring to a January 2004 form (Dkt. #1, ¶¶ 5-6 ). Yet, Defendant State Treasurer attached a January 30, 2004, exhibit entitled "JOSEPH RUSSELL GALE'S NOTICE OF LEGAL ADDRESS PURSUANT TO FINAL COURT ORDER OF OCTOBER 20, 2003." This has a notarized signature of Plaintiff that appears similar to that on his Complaint. It is addressed to GM's National Benefit Pension Administration Center. It identifies the Boyer Road Correctional Facility as Plaintiff's legal address. It directs GM to "Please send my monthly pension benefit checks to me at the above address. Once I am released from prison, I will notify you of my new legal address" (Dkt. #37, Ex. 1).

Plaintiff contends that his checks were no longer sent to his home address as of July 1, [2004][6], and on November 20, 2003 [2004][6], they were directed to his institutional account where 90% or $760/month were sent to the State Treasurer (Dkt. #1, ¶ 7). On September 5, 2006, Plaintiff sent a letter to GM allegedly responding to a February 2004, letter from GM and Plaintiff stated that his pension benefits were being forwarded to his prison address without his consent and/or permission (Dkt. #1, p. 27 of 32). In light of recent court decisions, Plaintiff maintained that GM was no longer compelled to cooperate with the State or comply with state court orders by sending his pension checks to his prison account. He requested instead that his pension checks be sent to: Joseph Gale, In care of Ruth Ann Gale, at her address in Midland, Michigan.

---

[6] Plaintiff's complaint states "2003" for both of these dates, but this was before the October 20, 2003, the Cheboygan County Circuit Court order. Thus it is assumed this date should be 2004, not 2003.

On September 25, 2006, GM replied to Plaintiff's letter and instructed him to contact the GM Benefits & Service Center at its toll free number to request that his records be changed (Dkt. #1, p. 31 of 32). The letter stated, however, that since Plaintiff's address had been changed by a court order an amended court order would be required to alter the address on record. On October 4, 2006, Plaintiff sent a second letter threatening court action if GM did not cease sending his pension checks to his prison address (Dkt. #1, p. 26 of 32). GM contends that checks payable for months commencing January 1, 2005, through December 2006, totaling $24,646.50, were forwarded to Plaintiff's prison address (Dkt. #16, p. 4).[7] Thereafter, commencing January 1, 2007, Plaintiff's monthly pension checks have been held in suspension pending a resolution of GM legal obligations. *Id.*

On March 19, 2007, Plaintiff provided GM with a Notice directing that his monthly pension benefits payable under the Pension Plan be sent c/o Mrs. Ruth Ann Gale, again at her Midland, Michigan address (Dkt. #45). The Notice also revoked his authorization on "Any and All Contracts, agreements, entered into unknowingly and unintentionally with the Michigan Department of Corrections in reference to what address my pension benefits shall be mailed " *Id.* It also required no change in the March 19 directive without Plaintiff's "express written consent in red ink, or without proper notice from me in person." Given GM's suspension of payments effective January 1, 2007, it would appear that GM has not honored this request awaiting further judicial directives..

Plaintiff never appealed the Cheboygan County Circuit Court 's final order. Yet, on

---

[7] This amount included a Christmas bonus check in the amount of $800 payable from corporation assets and a tax refund check of $50.00 (Dkt. #49, p. 1).

October 12, 2006, in light of the May 23, 2006, decision by Sixth Circuit in *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 2971 (2007), Plaintiff filed a Motion for Relief from Judgment in the Cheboygan County Circuit Court pursuant to MCR 2.612(C)(1)(e) seeking to nullify the state court's final order directing the delivery of his pension benefits (Dkt. #16, Ex. C).[8] Plaintiff's motion was denied by the Cheboygan County Circuit Court on November 9, 2006, on the basis that "(t)he decision in the *Daimler-Chrysler v. Cox* case is not a reversal of the prior judgment on which this final judgment is based"(Dkt. #1, p. 24).

## II.  STANDARD OF REVIEW

The Declaratory Judgement Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V).  The Declaratory Judgement Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).  In *Amsouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), the Sixth Circuit, citing its prior decision in *Scottsdale Ins. Co v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000), listed the five factors to be considered in determining whether a federal district court should exercise jurisdiction over a declaratory judgment:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in

---

[8] As discussed in greater detail below, in *DaimlerChrysler*, the Sixth Circuit disagreed with the Michigan Supreme Court and held that it is a violation of ERISA's anti-alienation provision to require a pension plan to update a prisoner's address and send his benefits to an account that is subject to confiscation by the state.  *DaimlerChrysler*, 447 F.3d at 975-976.

clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Id.* at 784.

## III.   FACTUAL ANALYSIS

### A.   Subject Matter Jurisdiction, Standing and Venue

The State Treasurer argues that this Court lacks subject matter jurisdiction to hear this case (Dkt. #38, p. 15).  Specifically, Defendant argues that the *Rooker-Feldman* doctrine, a combination of the abstention and *res judicata* doctrines, denied lower federal courts of subject matter jurisdiction to engage in what is, in effect, appellate review of state court proceedings, or to adjudicate claims "inextricably intertwined" with issues decided in state court proceedings. Application by a party in a state case to the United States Supreme Court is the "only avenue for federal review of state court proceedings."  *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 506 (6th Cir. 2000).

Subject matter jurisdiction is always a threshold determination.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (there is no "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt"). "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue."  *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606-07 (6th Cir.

1998)(citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986)).

Yet, here, this Court has jurisdiction of GM's Cross Claim under applicable sections of the Employee Retirement Income Security Act of 1974.  ERISA, section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a fiduciary with respect to an ERISA regulated employee benefit plan can bring an action to enjoin any act or practice which violates ERISA or to obtain other appropriate equitable relief:

> (a) Persons empowered to bring a civil action.  A civil action may be brought -
>
> * * *
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

ERISA, section 502(e)(1), 29 U.S.C. § 1132(e)(1), provides that for actions under 502(a)(3), the federal district courts have exclusive jurisdiction:

> (e) Jurisdiction
>
> (1)Except for actions under subsection(a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary . . . .

Because GM's National Benefit Pension Administration Center is in Southfield Michigan, venue is proper in this Court under ERISA, § 502(e)(2), 29 U.S.C. § 1132(e)(2):

> (2) When an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered . . . .

As properly argued by United States Solicitor General Paul D. Clement  in opposing a

grant of certiorari in the *Daimler-Chrysler* case,[9] ERISA's limit on alienation preempts notices from MDOC wardens of state court orders under Michigan's SCFRA to the extent that pension plans need comply with such notices and state court orders or face direct or indirectly sanctions.

The Michigan Treasurer argues that this case is distinguishable from the *Daimler-Chrysler* case which only reviewed compliance with warden notices and not with an inmate who complied with the state court order and did change the address for receipt of pension benefits. This is true, this is a mixed case where certain periods of the payments were pursuant to the warden's notice and certain payments were made pursuant to Plaintiff's notice of a change of address – which he now suggests was "unknowingly and unintentionally" signed. Yet, the threshold issue here is jurisdiction – whether this Court has the legal competence to decide the merits of the case – and the final outcome on the ultimate merits of the case is not determinative of jurisdiction. If this case only involved GM paying pursuant to a warden's notice and providing GM a copy of the state circuit court order, it would be identical to the facts under review by the Sixth Circuit in the *Daimler-Chrysler* case . Where, as here, a state court did not modify its earlier orders in light of the *Daimler-Chrysler* case, and the former employer's pension plan was concerned about significant potential liability to the state for ignoring a state court order involving one of its pension beneficiaries, that employer in the Sixth Circuit would have reason to believe such potential future liability would violate the *Daimler-Chrysler* case and thus be an "act or practice which violates" the anti-alienation provision of ERISA under 29 U.S.C. § 1132(a)(3)(A). Such an employer would have reason to assert that it is entitled, if not

---

[9] Exhibit A to Dkt. # 46, Supplemental Brief for Declaratory Judgment filed by General Motors Corporation.

to a injunction under 29 U.S.C. § 1132(a)(3)(A), at a minimum to "other appropriate equitable relief . . . to redress" such a potential violation by way of declaratory judgment as also provided for in § 1132(a)(3)(B). The fact that a court on the merits may rule against such an employer would not deprive a federal court of jurisdiction to address the merits. Thus, GM acted properly in filing its Cross Claim against the State Treasurer in this Court and this Court has jurisdiction to address the merits of the declaratory relief GM seeks under 29 U.S.C. § 1132(a)(3).

Nor is GM's action for declaratory relief barred by the *Rooker-Feldman* doctrine, as was Plaintiff's claim against the State Treasurer. In *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006), the Sixth Circuit explained the application of the *Rooker-Feldman* doctrine:

> In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court held that a federal district court may not review a state court decision for alleged federal law error. Such holding was reaffirmed sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Feldman*, the court wrote:
>
>> [L]ower federal courts possess no power whatever to sit in direct review of state court decisions. If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial [of a claim] in a judicial proceeding . . . then the District Court is in essence being called on to review the state-court decision. This the District Court may not do.
>
> *Id.* at 483 n. 16, 103 S.Ct. 1303 (internal quotation marks and citation omitted). The principles enunciated in *Rooker* and *Feldman* have become known as the *Rooker-Feldman* doctrine. As clarified in *Exxon Mobil*, application **of the doctrine is confined to "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."** *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517. As stressed in *Exxon Mobil*, "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293, 125 S.Ct. 1517 (internal quotation marks omitted); *see also McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir.2006) (explaining that "[i]n *Exxon*, the Supreme Court implicitly repudiated the

circuits' post-Feldman use of the phrase 'inextricably intertwined' to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment"); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir.2005) (explaining that "federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they complain of an injury caused by a state judgment" (emphasis omitted)); *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir.2006) (explaining that "[u]nder *Exxon*, . . . *Feldman*'s 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court"). In other words, "[t]he key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *McCormick*, 451 F.3d at 394.

*Fieger*, 471 F.3d at 642-643 (emphasis added)

Here, GM is not a "state court loser complaining of injuries by state-court judgments." Unlike the Plaintiff, GM was not a party to the Cheboygan County Circuit Court action, which resulted in a state court order directing the payment of Plaintiff's pension benefits. *See, State Treasurer v. Joseph Russell Gale*, Cheboygan Co. Cir. Court, Case No. 03-7186-CZ. Additionally, GM is not directly injured by the state-court judgment but rather it fears either tort, contract or other potential future liability in a state or federal court for complying with it or for defying it and complying with the March 19, 2007, directive of Plaintiff. Accordingly, GM is not prohibited by the *Rooker-Feldman* doctrine from bringing the present Cross-Claim and Motion for Declaratory Judgment.[10]

---

[10] In addition, *Daimler-Chrysler v. Cox* was a nearly identical action was brought by *DaimlerChrysler* as a pension plan fiduciary seeking a declaratory judgment that state court orders directing the payment of pension benefits should be held void, and were therefore not required to be followed. *See DaimlerChrysler,* 447 F.3d at 969., 447 F.3d at 969. While the 6th Circuit did not directly address the *Rooker-Feldman* doctrine in its opinion, it is presumed the court must have considered such jurisdictional arguments as a threshold question and determined

### B.     Eleventh Amendment Immunity

The State Treasurer also claims this Court lacks subject matter jurisdiction to hear this case because the claims against the State Treasurer in his official capacity are barred by the Eleventh Amendment.  Under the Eleventh Amendment, a state is immune from suit brought in federal court by its own citizens or citizens of other states.  *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Federal court actions against agencies or instrumentalities of a state are also barred by the Eleventh Amendment.  *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.1986).  A suit against state officials, in their official capacities, is the same as a suit against the state itself and therefore is subject to the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Yet, the courts have recognized an exception to the Eleventh Amendment's jurisdictional bar where suit against a state officer in his or her official capacity seeks prospective injunctive relief.  In *Cotton v. Mansour*, 863 F.2d 1241 (6th Cir. 1988), *rehearing and rehearing en banc denied* (1989), the Sixth Circuit explained that prospective declaratory or injunctive relief is not barred by the Eleventh Amendment:

> The eleventh amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State." The Supreme Court has long held that the amendment also applies to suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974).

> The Supreme Court has also clearly determined that relief under the *Ex Parte Young* exception [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] to the eleventh

that subject matter jurisdiction was proper in the federal courts.

amendment bar must be prospective in nature.

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the type awarded in *Ex Parte Young* gives life to the Supremacy Clause. **Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law**. *See Pennhurst [State School & Hospital v. Halderman]*, *supra,* 465 U.S. [89] at 102 [104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984)]. *See also Milliken v. Bradley*, 433 U.S. 267 [97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)].

*Cotton*, 863 F.2d at 1244 (emphasis added).

Similarly, in *Thiokol Corp. v. Department of Treasury, State of Mich, Revenue Div.*, 987 F.2d 376 (6th Cir. 1993), the Sixth Circuit explained that although ERISA does not abrogate the application of the Eleventh Amendment, neither it nor the Federal Tax Injunction Act bars suits against state officials in their official capacity for prospective declaratory and injunctive relief:

> Application of the Eleventh Amendment has the following effects: 1) all claims against the Department of Treasury are barred; and 2) all claims against all parties for monetary relief are also barred. We hold that neither the Eleventh Amendment nor the TIA bars plaintiffs from suing defendant officials Roberts and Hoatlin in their official capacity for prospective declaratory and injunctive relief.[11]

*Id.* at 382.

The State Treasurer argues that the *Young* exception does not apply here because GM seeks a declaratory judgment that it has no liability to Plaintiff based on its past action in forwarding monthly payment pension benefit checks payable to Plaintiff at his prison address. While it is true that immunity from past actions would not constitute *prospective* declaratory and

---

[11] The State Treasurer argued that a declaratory judgment is prohibited here by the Federal Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 (Dkt. #38, p. 29). Yet, the Sixth Circuit has found to the contrary, holding that the TIA does not preclude ERISA challenges to state tax laws, since federal courts have exclusive jurisdiction over ERISA claims, those claims are within exception to TIA for claims without plain, speedy and efficient remedy at state law. 28 U.S.C.A. § 1341; Employee Retirement Income Security Act of 1974, §§ 2 *et seq.*, 514(a), 29 U.S.C.A. §§ 1001 *et seq.*, 1144(a); U.S.C.A. Const. Amend. 11. *See, Thiokol*, 987 F.2d at 380-381.

injunctive relief, GM is seeking such relief solely from Plaintiff.  Because Plaintiff is not a government agent, he is not subject to Eleventh Amendment immunity.  Accordingly, there is no jurisdictional bar preventing GM from bringing this declaratory action against Plaintiff as it relates to prior acts.

Secondly, GM seeks a declaration that pension benefits being held in suspension commencing January 1, 2007, and pension benefits payable in the future should be forwarded to the address designated by Plaintiff, or should continue to be held in suspension at his direction.  As the relief sought here relates to future acts the State Treasurer is not entitled to Eleventh Amendment immunity for such  prospective relief.  Accordingly, it is proper for this Court to address GM's Motion for Declaratory Judgment in its entirety.

### C. *DaimlerChrysler Corp. v. Cox*

In enacting ERISA, 29 U.S.C. 1001 et seq., Congress established a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries.  *See Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 90 (1983).  Finding "that the continued well-being and security of millions of employees and their dependents are directly affected by these plans," 29 U.S.C. 1001(a), Congress prescribed various disclosure and reporting requirements (29 U.S.C. 1021-1031 (2000 & Supp. IV 2004)), participation and vesting standards (29 U.S.C. 1051-1061 (2000 & Supp. IV 2004)), fiduciary obligations (29 U.S.C. 1101-1114 (2000 & Supp. IV 2004)), criminal penalties (29 U.S.C. 1131 (2000 & Supp. IV 2004)), and civil enforcement provisions (29 U.S.C. 1132 (2000 & Supp. IV 2004)) to effectuate the statute's policy of protecting "interstate commerce and the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. 1001(b).

Here, in the administration of its pension and retirement programs, GM claims it needs guidance from this Court regarding the payment of benefits to Plaintiff and to similarly situated retirees (Dkt. #28, p. 2). GM therefore seeks a declaration that prior to pension benefits being suspended, it had no liability for forwarding pension benefits to Plaintiff's prison address in accordance with the state court order entered by the Circuit Court for Cheboygan County and in reliance on the Michigan Supreme Court's decision in *State Treasurer v. Abbott*, 468 Mich. 143 (2003), cert. denied, 540 U.S. 1112 (2004). Further, GM seeks a declaration that under the holding in *DaimlerChrysler* future pensions benefits should be forwarded pursuant to Plaintiff's instructions.

In *DaimlerChrysler*, Michigan sought to recover pension benefit payments that four inmates were receiving under the DaimlerChrysler Corporation-UAW Pension Agreement (the "Plan"). *DaimlerChrysler*, 447 F.3d at 969. The Michigan Attorney General obtained a judgment under SCFRA in state court, and Michigan was awarded a percentage of each inmate's pension payments.[12] Accordingly, to effectuate the SCFRA award, the state court ordered each inmate to inform the Plan that benefit payments should be sent to his institutional address. The orders further provided that, if the inmate refused to give such notice, the warden was to serve on DaimlerChrysler Corporation a copy of the court's order and a notice that the institutional address was the legal address where the inmate should receive his pension benefits. *Id.* at 970. The orders then directed the warden to make distributions to the State from each inmate's

---

[12] The four Michigan State Circuit Courts actions are: *State Treasurer v Alvin Jenkins*, #440746, Wayne Circuit Court Case No. 04-409473-CZ; *State Treasurer v Harold Swanson*, #244541, Macomb Circuit Court Case No. 04-573-CZ; *State Treasurer v Gerald Cotter*, #282313, Macomb Circuit Court Case No. 04-435-CZ, and *State Treasurer v Jessy Mathews*, #318067, Wayne Circuit Court Case No. 04-422565-CZ.

account in an amount equal to the court-ordered percentage of the inmates' pension benefits.

Michigan Department of Corrections security restrictions allow inmates to have only one bank account – a prison account – during their term of incarceration, and they require that inmates receive all funds and conduct all financial transactions through that prison account. *See* Mich. Dep't of Corrs. Policy Directive No. 04.02.105 (2004). Consistent with that directive, the state court further ordered that, when payments from the pension plan were received at the institutional address, they were to be deposited directly into the inmate's institutional account, from which the warden was to make monthly distributions to Michigan of 90% of the funds. *DaimlerChrysler*, 447 F.3d at 970.

Only one of the inmates complied with the order to notify the Plan that benefits should be sent to his institutional address, and DaimlerChrysler changed his address accordingly. *Id.* The other three inmates refused to provide notice to the Plan of their institutional address, and their respective wardens sent change of address notices to DaimlerChrysler as the state court had ordered. *Id.*

DaimlerChrysler did not comply with the wardens' notices, but instead brought a declaratory judgment action in the United States District Court for the Eastern District of Michigan, seeking a determination that (1) state officials are precluded from enforcing the orders against the prisoners to the extent that they contravene ERISA or the Pension Plan, and (2) the orders, requests for reimbursement, and the notices issued pursuant to SCFRA are void to the extent that they compel the prisoner, or require the warden, to direct DaimlerChrysler to make payments to an account that is not voluntarily designated by the prisoner. *Id.* The district court granted DaimlerChrysler's request for a declaratory judgment, holding that the orders and notices

violated ERISA's anti-alienation provision to the extent that they purported to require

DaimlerChrysler to direct pension benefits to a place not designated by the inmate.  *Id*. at 971.

The district court, however, rejected DaimlerChrysler's contention that the state court orders and

wardens' notices were also preempted by ERISA's general preemption provision, 29 U.S.C.

1144(a).[13]

Importantly, although DaimlerChrysler originally sought to void the state court orders

with respect to all four inmates, DaimlerChrysler subsequently limited its position and asserted

only that the orders and notices were void to the extent that they purported to require the warden

to direct funds to the prison accounts without the inmates' cooperation.  Accordingly, whether a

prohibited alienation occurs when a court orders an address change and the inmate cooperates in

directing the plan to change his address was no longer an issue in the case and was not addressed

on appeal.

The Sixth Circuit affirmed the district court's findings.  The court observed that Treasury

Regulation § 1.401 (a)-13(c)(1) (26 C.F.R.) "define[s] the terms 'assignment' and 'alienation' [in

ERISA's anti-alienation provision] as including '[a]ny direct or indirect arrangement (whether

revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or

interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is,

---

[13] DaimlerChryselr argued that Section 514 of ERISA, 29 U.S.C. 1144, which provides
generally that ERISA "shall supersede any and all State laws insofar as they may now or
hereafter relate to any employee benefit plan," supplied an additional ground on which to
preclude enforcement of the orders and notices under SCFRA against the Plan. The Sixth Circuit
found it unnecessary to reach that alternative argument because it held that the anti-alienation
provision prohibited enforcing the orders and notices against the Plan. *Id*.  at 976. *See Boggs v.
Boggs*, 520 U.S. 833, 841 (1997) (holding that there was no need to reach the Section 514
preemption issue when state law conflicted with the anti-alienation provision).

or may become, payable to the participant or beneficiary.' " *Id.* at 973; *see* Reorg. Plan No. 4 of 1978, 3 C.F.R. 332 (1979) (Secretary of Treasury has authority to issue regulations under ERISA's anti-alienation provision). The Sixth Circuit further observed that it, along with a majority of the other circuits, had held that once benefit payments have been disbursed to a beneficiary, creditors may encumber the proceeds, but that ERISA protects pension plan benefits from alienation up to the point of payment to the beneficiary. *Id.* at 974. The court thus formulated the issue before it as whether the wardens' notices encumbered the benefit payments before the payments left plan control.

The Sixth Circuit concluded that "the SCFRA notices operate on plan benefits before they are sent," thus falling within ERISA's prohibition on alienation. *Id.* The court explained that this is not a case "where a plan is no longer obligated to protect pension payments from alienation because the benefits have already been disbursed at the direction of the beneficiary." *Id.* at 975. The court acknowledged that the warden could not obtain access to the pension benefit payments until after the funds were deposited into the inmate's account, but explained that the notices were received by the Plan while it still had control of the funds and, if the notices were enforceable against the Plan, they would effectively divert funds against the inmate's wishes to an account in which Michigan already had a 90% interest. *Id.* at 975. The court thus concluded that this case stood in contrast to those cases in which an encumbrance was placed on funds after the pension plan no longer had control of them. *Id.*

The Sixth Circuit rejected petitioner's argument that the orders and notices did not result in a prohibited alienation of benefits because the state court order only directed the warden to send notices, but did not directly require DaimlerChrysler to do anything. *Id.* The court

observed that DaimlerChrysler sought a declaration as to whether it must comply with the wardens' notices and reasoned that to hold that DaimlerChrysler had to comply with the notices would create a legal obligation enforceable against the plan before distribution. Accordingly, the court concluded that the notices were void to the extent that they directed DaimlerChysler to send benefits to an account controlled by the warden, because such a directive would constitute an alienation of plan assets. *Id.* Further, the Sixth Circuit opined that Michigan could still reach benefit payments but must wait until the payments are received at the direction of the inmate before encumbering them (citing *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1082-1083 (10th Cir. 1994), modifying, 10 F.3d 700 (10th Cir. 1993), *cert. denied*, 514 U.S. 1063 (1995)). *Id*. at 974.

**D.**    ***State Treasurer v. Abbott***

 In *State Treasurer v. Abbott*, 660 N.W.2d 714 (Mich. 2003), *cert. denied*, 540 U.S. 1112 (2004), the Michigan Supreme Court addressed the same statutory scheme at issue in *DaimlerChysler*, but in the context of a dispute between the State Treasurer and an inmate involving a state court order that directed the inmate to instruct his pension plan to send his pension benefits to his prison address, and that further directed the warden then to divide the funds among the inmate, the inmate's wife and the State. *Id*. at 716-717. The state court also ordered that, if the inmate refused to instruct the pension plan to send the proceeds to his prison address, the pension plan was nonetheless required to do so. *Id*. at 717.

Viewing the issue as whether the state court's order directing the inmate to instruct the pension plan to send his benefit payments to his prison address violated the anti-alienation provision, the Michigan Supreme Court concluded that no violation occurred. Like the Sixth

Circuit, the Michigan Supreme Court observed that the pertinent Treasury Regulation, 26 C.F.R. 1.401(a)-13(c)(1), defined an alienation as an arrangement that contemplates the transfer of an interest in plan benefits to a person other than the beneficiary.  *Id.* at 718.  Yet, unlike the Sixth Circuit, the Michigan Supreme Court held that ordering an inmate to direct a plan to send his benefit payments to his prison address did not transfer an interest in the benefit payment to another person.  *Id.* at 718-719.  The court further stated that the state court's order in the alternative, requiring the plan to send the payments to the inmate's prison address if the inmate refused to notify the plan to do so, did not violate the anti-alienation provision for the same reason.  *Id.* at 720 ("Because [the prisoner] . . . receives the funds, no assignment or alienation occurs.").

In *DaimlerChrysler*, the Sixth Circuit acknowledged that the Michigan Supreme Court had previously addressed similar notices and orders under SCFRA, but found the *Abbott* Court's reasoning "unpersuasive." *DaimlerChrysler*, 447 F.3d at 976.  The court of appeals explained that it was irrelevant that the inmates received payments at their "own" prison accounts, because the inmates did not want to receive payments in accounts in which Michigan already had obtained up to a 90% interest.  *Id.*  The court concluded therefore that "[t]he fact that the payments were sent to the prisoner's institutional address is therefore a mere formalism that is not dispositive of whether an alienation has occurred in the present case."[14]  *Id.*

_____

[14] As the court of appeals observed, courts have "vigorously" enforced the anti-alienation provision and have declined to recognize any implied exceptions to the statutory bar, uniformly holding that pension benefits cannot be garnished or attached through any direct or indirect means while under plan control.  *DaimlerChrysler*, 447 F.3d at 973 (quoting *Patterson v. Shumate,* 504 U.S. 753, 760 (1992)). *See, e.g., Guidry*, 493 U.S. at 371-377 (holding that imposition of a constructive trust on an embezzler's pension benefits violated ERISA's anti-alienation provision); *Patterson*, 504 U.S. at 760 (holding that a bankruptcy trustee was

Yet, the Sixth Circuit expressly declined to decide whether ERISA's anti-alienation provision would be violated if Michigan sought to compel an inmate to send an address change to his pension plan, the specific action that was challenged in *Abbott*. *Id*. And the *Abbott* court was not confronted with a challenge by the plan to prevent enforcement of the SCFRA order that required it to redirect the prisoner's pension benefits to his prison account in the event the prisoner failed to direct the plan to do so. Indeed, the pension plan involved in *Abbott* was not even a party to the proceeding. Thus, although the *Abbott* Court's reasoning is in significant tension with that of the Sixth Circuit on the application of ERISA's limit on alienation, there is no direct conflict between the two holdings.[15]

---

prohibited from including as an asset of the bankruptcy estate a debtor's interest in his employee-benefits plan); *compare Bennett v. Arkansas*, 455 U.S. 395 (1988) (Social Security Act's anti-alienation provision bars State's attachment of Social Security benefits to pay costs of inmates' incarceration).

[15] In *Abbott v. Michigan*, 474 F.3d 324 (2007), the Sixth Circuit rejected a collateral attack on the Michigan Supreme Court's decision in *Abbott*. *Id*. at 328-332 (holding that prisoners' claims were barred by either the *Rooker-Feldman* doctrine or *res judicata*). In so doing, the court noted that *Abbott* was "in tension with" its' decision in *DaimlerChrysler*. *Id*. at 327 n.3.

In *State Treasurer v. Krueger*, 723 N.W.2d 827 (2006), the Michigan Supreme Court declined to review a decision by the Michigan Court of Appeals that may have provided an opportunity to reconsider *Abbott* in light of the Sixth Circuit's decision in *DaimlerChrysler*. *See id*. at 827-828 (Markman, J., concurring in denial of application for leave to appeal) (concluding that the case did not present an opportunity to revisit *Abbott* because *Abbott* was "readily distinguishable"); *id*. at 828 (Kelly, J., dissenting from denial of application for leave to appeal) (concluding that the case "would necessitate a revisiting of *Abbott*" and that such reconsideration was warranted because "the Sixth Circuit has thrown the validity of *Abbott* into question").

It is also noteworthy that the Supreme Court of the United States has denied *certiorari* in both the *Abbott* case, and more recently in the *DaimlerChrysler* case. In the Supreme Court's June 18, 2007, decision to deny *certiorari* of *DaimlerChrysler*, the Court was fully aware that a tension existed between the findings of the Sixth Circuit and the Michigan Supreme Court, but declined to address that issue.

E.    **Prior Payments**

GM seeks a declaration from this Court that it has no liability to Plaintiff by forwarding monthly pension checks payable to him to his address at the prison during the period from January 1, 2005, through December 2006 (Dkt. #16, p. 14).  The Declaratory Judgment Act provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought."  28 U.S.C. § 2201(a); *Public Service Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952).  To satisfy the "case and controversy" requirement of Article III, a party must should that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct, and the injury or threat must be "real and immediate," not "conjectural" or "hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).  Typically, a declaratory judgment is sought before a completed injury-in-fact has occurred.  *National Rifle Assoc., et al v. Magaw, et al*, 132 F.3d 272, 279 (6th Cir. 1997). Nevertheless, when seeking declaratory relief, a plaintiff must demonstrate actual present harm or significant possibility that future harm is impending to justify relief.  *Bras v. California Public Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995); *Peoples Rights Organization, Inc. v. City of Columbus et al*, 152 F.3d 522, 527 (6th Cir. 1998); *Nat'l Rife Assoc.*, 132 F.3d at 280.

Applying this standard, the Sixth Circuit has held that, in the context of a declaratory judgment action, a case is ripe for review "only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Peoples Rights Organizations*, 152 F.3d at 527 (quoting *Nat'l Rife Assoc.*, 132 F.3d at 280).  The ripeness requirement aims to prevent the court from entangling itself in "abstract

disagreements." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985).

The State Treasurer argues that GM has failed to demonstrate that it could reasonably be accused of violating ERISA by sending Plaintiff's pension checks to the prison, when Plaintiff himself authorized GM explicitly to send his checks to the prison until he is released from prison. As noted above, on January 30, 2004, Plaintiff signed a Notice of Legal Address Pursuant to Final Court Order of October 20, 2003, identifying the Boyer Road Correctional Facility as his legal address and directing GM to "Please send my monthly pension benefit checks to me at the above address. Once I am released from prison, I will notify you of my new legal address" (Dkt. #37, Ex. 1).[16] The *DaimlerChrysler* Court did not consider a case where an inmate signed a Notice of Legal Address, but only considered cases where the inmate had refused to sign the Notice of Legal Address and the warden had sent a notice to the pension source notifying it of the inmate's prison address pursuant to the state court's orders. In fact, the Sixth Circuit specifically stated: "We are not passing, however, on the question of whether state officials can compel prisoners to send their address changes to the Pension Plan because that issue is not before us." *DaimlerChrysler*, 447 F.3d at 976.

Yet, the State Treasurer fails to acknowledge that Plaintiff sent GM letters dated September 5, 2006, and October 4, 2006, directing that his pension benefits no longer be sent to his prison address. A request GM failed to honor until January 2007, although it noted that the

---

[16] Plaintiff appears to dispute the authenticity of this Notice of Legal Address. As noted above, Plaintiff asserts in his Complaint that on four occasions he refused to sign a pension benefits address change in compliance with the Cheboygan County Circuit Court, specifically referring to a January 2004 form (Dkt. #1, ¶¶ 5-6 ). Yet, the State Treasurer attached a January 30, 2004, Notice of Legal Address Pursuant to Final Court Order of October 20, 2003, identifying the Boyer Road Correctional Facility as Plaintiff's legal address. (Dkt. #37, Ex. 1). This has a notarized signature of Plaintiff that appears similar to that on his Complaint.

state court order as to his proper address needed to be changed. Rather, checks payable for months commencing January 1, 2005, through December 2006, totaling $24,646.50, were forwarded to Plaintiff's prison address by GM (Dkt. #16, p. 4). Accordingly, an actual controversy exists regarding the actions of GM in sending Plaintiff's pensions payments to his prison address. While Plaintiff clearly asserts liability against GM, GM cannot be liable for payments made pursuant to Plaintiff's January 30, 2004, NOTICE OF LEGAL ADDRESS directive, nor for the transitional months while it and Plaintiff were exchanging communications on the manner of getting the address changed or the payments suspended in light of the Cheboygan Circuit Court Order.

### F.   Future Payments

GM also seeks a declaration that pension benefits held in suspension commencing January 1, 2007, and pension benefits payable in the future should be forwarded to the address designated by Plaintiff, or should continue to be held in suspension at his direction. This is precisely the relief the Sixth Circuit and lower court granted DaimlerChrysler in deciding its motion for declaratory judgment. The Sixth Circuit invalidated the state court orders as they apply to inmate-pensioners who refuse to notify their pension plan of their prison address and bank. In these instances, the court voided the portion of the SCFRA order directing wardens to make the address change notification and directed the Plan to ignore the state court orders and notices and send or deposit the funds as designated by the inmate.

The Sixth Circuit's conclusion that the orders and notices would effect a prohibited alienation, insofar as they require the plan to send pension payments to the inmates' prison accounts, is reinforced by the overall operation of the statutory scheme in this case. SCFRA

provides for the state court, after considering the inmate's moral and legal obligations to support his dependents, to order the inmate to reimburse the state for the costs of his incarceration in an amount up to 90% of the inmate's assets. Moreover, the specific orders in this case were actions initiated by the Attorney General under SCFRA for the specific purpose of obtaining an allocation to the State of up to 90% of the inmates' pension benefits. The state court then ordered the inmate to instruct his Pension Plan to pay benefits into his prison accounts, under the control of the State, to satisfy the state court's award. And if he failed to do so, the warden was instructed to send the order and notices to the Pension Plan directing it to do so. From start to finish, then, the proceedings under SCFRA were directed in substance toward a court-ordered redirection of the inmate's pension benefits by the pension plan to the state. That result is prohibited by ERISA's anti-alienation provision. While this Court's determination does not disparage the legal right or the policy wisdom of Michigan seeking to have inmates pay for their housing and maintenance when they are financially able to do so, the means of enforcing such a legal entitlement by the state must be in accordance with the legislative directives of Congress in ERISA's limit on alienation.

ERISA reflects a congressional policy "to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for wrongs done them." *Patterson v. Shumate*, 504 U.S. 753, 765 (1992) (quoting *Guidry*, 493 U.S. at 376). That policy is implemented through ERISA's anti-alienation provision, which provides that "[e]ach pension plan shall provide that the benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), 29 U.S.C. 1056(d)(1). Similarly, Section 401(a)(13) of the Internal Revenue Code, 26 U.S.C. 401(a)(13),

prohibits assignment or alienation of benefits if a pension plan is to be considered a tax qualified plan. Treasury Regulation Section 1.401(a)-13 reiterates the same prohibition and further clarifies "that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. 1.401(a)-13(b)(1).[17] While it could be argued that SCFRA merely directs that pension benefits of an inmate be directed to pay for that inmate's housing and maintenance, and thus fulfills the primary goal of pensions, the manner of SCFRA doing this runs afoul of the specific language of ERISA as interpreted by the Sixth Circuit.

Thus, unless and until ERISA is modified by Congress, the State of Michigan will have to consider other means of reaching the proceeds of a prisoner's pension benefits, *after* they have been received, and in a manner that would effectuate the sound policy underlying SCFRA without violating ERISA's anti-alienation provision. *DaimlerChrysler* does not hold that Michigan's statute, SCFRA, is totally preempted by ERISA's anti-alienation provision, but merely that any implementation of SCFRA which imposes direct or indirect obligations on an ERISA plan while the funds are still under the plan's control. The Sixth Circuit did not consider the validity of the statute, as such, but rather the validity of state court orders issued to implement SCFRA in this case. The Sixth Circuit observed that "[o]nce the benefit payments are received, even if the prisoner tries to conceal them in an illegal account, the state can take

_____

[17] The Treasury Regulation defines the terms "assignment" and "alienation" as including "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. 1.401(a)-13(c)(1).

action against the prisoner by placing a constructive trust on those already-paid funds."
*DaimlerChrysler*, 447 F.3d at 976; *See also Howell*, 227 F.3d at 678-679 (ERISA-protected benefits may be encumbered after they have been distributed); Mich. Comp. Laws § 600.6104(1) (2000) (authorizing discovery of property or money belonging to judgment debtor); *id.* § 600.6110 (authorizing state judge to subpoena judgment debtor and judgment debtor's records concerning his property or income); id. § 800.404a(1) (1998) (authorizing attorney general, in seeking reimbursement under SCFRA, to use "any remedy, interim order, or enforcement procedure . . . to restrain the prisoner . . . from disposing of certain property").

Here, GM took reasonable steps to ensure that Plaintiff's benefits were administered in accordance with the applicable law. In fact, GM followed Plaintiff's instructions explicitly for two years and forwarded his pension benefits to his prison address according to the instructions contained in Plaintiff's January 30, 2004, NOTICE OF LEGAL ADDRESS. In the fall of 2006, in light of Plaintiff's new directions that his benefits no longer be forwarded to his prison address GM suspended the prison delivery in January 2007 and continues to hold the funds seeking further judicial guidance. There is no evidence of bad faith on behalf of GM. Rather, GM, caught in the cross- fires of conflicting state and federal court opinions,[18] seeks to determine its obligations under state and federal law. In January 2007, it suspended the disbursement of Plaintiff's benefits as a remedial measure until it could gain guidance from this Court on the issues involved in the present controversy.

Following the Sixth Circuit's decision in *DaimlerChrysler*, it is **RECOMMENDED** that

---

[18] *State Treasurer v. Abbott* in May 2003, and the decision of the Sixth Circuit Court of Appeals in *DaimlerChrysler* in May 2006.

GM's Motion for Declaratory Judgment **BE GRANTED** and it be authorized to make payments of Plaintiff's pension benefits in accordance with the directions of Plaintiff without exposure to liability to or other sanctions by the State of Michigan .

## IV.    RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that the Orders, Notices and State Treasurer's requests to GM and/or the Pension Plan (or its administrator) under SCFRA be declared preempted by ERISA and void, but only to the extent the Orders, the Notices and SCFRA either directs GM and/or the Pension Plan, or directs a correctional facility Warden (or his or her representative) to direct GM or the Pension Plan to send or make payments of Plaintiff's Pension Plan benefits to any address or account other than as designated by the Plaintiff who is the Participant under the terms of the Pension Plan.

It is **FURTHER RECOMMENDED** that any Action or Order (including the Notices) which the State of Michigan may seek in the future, for payments or reimbursements by GM and/or the Pension Plan (or its administrator) under SCFRA be declared preempted by ERISA and void, but only to the extent any such Order and/or SCFRA either (1.) directs GM and/or the Pension Plan (or its administrator), or directs a correctional facility Warden (or his or her representative) to direct GM and/or the Pension Plan (or its administrator), to send or make payments of Plaintiff's Pension Plan benefits to any address or account other than as designated by the Plaintiff who is the Participant under the terms of the Pension Plan, or (2.) otherwise orders GM and/or the Pension Plan (or its administrator) to make surrogate payments, reimbursements or damages to or on behalf of the State of Michigan forPlaintiff's Pension Benefits not sent to Plaintiff's prison address.

It is **FURTHER RECOMMENDED** that the State of Michigan be precluded from attempting to enforce any Order and/or Notice to GM and/or the Pension Plan (or its administrator) and any future similar Orders and Notices by seeking orders of contempt against GM and/or the Pension Plan (or its administrator) to the extent such enforcement efforts would run contrary to this Court's ruling as stated above.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. §636(b)(1); E.D. Mich. LR 72.1(d). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: December 27, 2007         Steven D. Pepe
Flint, Michigan                United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: David M. Davis, Esq. Kathleen A. Gardiner, Esq., and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants: Joseph Gale #420395, Boyer Road Correctional Facility, 10274 Boyer Rd., Carson City, MI 48811

                                                 s/Alissa Greer
                                                 Alissa Greer
                                                 Courtroom Deputy Clerk
                                                 U.S. District Court